**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

CONSERVATION FORCE, et al.,

      **Plaintiffs,**
              **v.**
KENNETH SALAZAR, in his official
capacity as Secretary of the United States
Department of the Interior, et al.,

      **Defendants.**

                            **Civil Action No.  10-1057 (JDB)**

---

## MEMORANDUM OPINION & ORDER

    Defendants, the Secretary of the Department of the Interior and the Fish and Wildlife Service (together "FWS"), have filed a Rule 60(b)(5) motion to partially vacate the Court's April 5, 2012, Order. They argue that subsequent events have rendered prospective application of the order inequitable. For the reasons explained below, the Court will deny the motion.

    The facts of this case are laid out in full in the Court's earlier opinion. See Conservation Force v. Salazar, 851 F. Supp. 2d 39 (D.D.C. 2012). Plaintiffs are individuals who support sustainable hunting of the Canadian wood bison. When they applied for permits to import their wood bison hunting trophies, and at the time of the Court's opinion, the Canadian wood bison was classified as "endangered" under the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1531 et seq. The ESA generally prohibits the importation of endangered species in any form, including hunting trophies. See 16 U.S.C. § 1538(a)(1)(A); 50 C.F.R. § 17.21(b). But the Secretary may permit the importation of endangered species in certain circumstances, including "to enhance the propagation or survival of the affected species." See 16 U.S.C § 1539(a)(1)(A); see also 50 C.F.R. § 17.22(a)(1). Plaintiffs applied for permits under the ESA. See, e.g., Administrative Record at 44 [Docket Entry 23-1] (Nov. 2, 2010). FWS denied all four

applications, explaining that it was unable to determine that the importation would enhance the survival or the propagation of the wood bison. See, e.g., id. at 318. Plaintiffs then brought this action, challenging FWS's decision as arbitrary and capricious. The Court agreed that the agency's explanation was inadequate and granted summary judgment to the plaintiffs. See Conservation Force, 851 F. Supp. 2d at 54. As is standard in such circumstances, the Court remanded the claim "to the Secretary of the Department of the Interior for further consideration of plaintiffs' permit applications." Amended Order [Docket Entry 46] (Apr. 5, 2012). The Court entered judgment on April 5, 2012. See Fed. R. Civ. P. 58(c) ("judgment is entered" "when the judgment is entered in the civil docket" and "is set out in a separate document").[1]

After judgment was entered, FWS reclassified the wood bison from endangered to threatened status, effective June 4, 2012. See 77 Fed. Reg. 26191, 26191 (May 3, 2012). Importation of threatened species, like that of endangered species, is generally prohibited under the ESA. See 50 C.F.R. § 17.31(a) (directing that the general prohibition on importation of endangered species "shall apply" to threatened species). A person seeking to import a threatened species, however, has more options. First, just as for importing an endangered species, FWS can grant a permit in various circumstances, including upon finding that the action would be for "the enhancement of propagation or survival" of the affected species. 50 C.F.R. § 17.32(a)(1). Second, the ESA contains an exemption allowing importation of certain threatened species without an ESA permit. See 16 U.S.C. § 1538(c)(2). The exemption applies to species listed in

---

[1] The April 5, 2012, Order constituted a separate document under Rule 58. See Fed. R. Civ. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document . . . ."). The Order, filed in addition to the Court's Memorandum Opinion [Docket Entry 44], contained no "legal reasoning [or] authority," and was hence "separate" under the D.C. Circuit's interpretation of Rule 58. See Kidd v. District of Columbia, 206 F.3d 35, 38 (D.C. Cir. 2000) (internal quotation marks omitted). And, although Rule 58 was amended in 2002, none of those changes redefine a "separate" document or otherwise cast doubt on Kidd's holding. See Outlaw v. Airtech Air Conditioning & Heating, Inc., 412 F.3d 156, 163 (D.C. Cir. 2005) (discussing the 2002 revision); see also Simms v. D.C. Dep't of Corr., No. 08-7151, 2009 WL 2832453 (D.C. Cir. June 22, 2009) (unpublished order) (relying on Kidd to interpret the revised Rule 58).

Appendix II of the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES), and requires that the importer obtain a CITES permit by demonstrating that the specimens were legally obtained under the exporting nation's laws and that export will not be detrimental to the species' survival. See id.; see also 77 Fed. Reg. at 26203. The wood bison is listed in CITES Appendix II, and a Canadian export permit will satisfy the requisite showing of CITES compliance. See id. at 26207 (when reclassified, wood bison trophies will be able to "be imported if the required CITES Foreign Export Permits are obtained from Canada prior to the import").

On May 17, 2012, defendants filed a motion for relief under Rule 60(b)(5), arguing that "the continued application of the Court's remand instructions – ordering the Service to reconsider whether the individual Plaintiffs should be issued import permits under the enhancement permit provision in [16 U.S.C. § 1539(a)(1)(A)] – is wholly unnecessary because [§ 1539(a)(1)(A)] applies only to endangered species." Defs.' Mot. to Partially Vacate Am. Order [Docket Entry 49-1] at 9-10 (May 17, 2012) ("Defs.' Mot."). Defendants acknowledge that "there is an analogous enhancement permit provision for threatened species in 50 C.F.R. § 17.32." Id. at 10. But they contend that plaintiffs would not need to obtain these enhancement permits because plaintiffs' trophies will be eligible for importation under the ESA's exemption for species listed in CITES Appendix II, 16 U.S.C. § 1538(2)(A). See 77 Fed. Reg. at 26207 ("When the wood bison is reclassified to threatened . . . , import of trophies legally taken and properly [CITES-]permitted can also occur.").

Rule 60(b)(5) allows the Court to "relieve a party . . . from a final judgment" because, among other things, "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "[T]he Rule provides a means by which a party can ask a court to modify or vacate a judgment

or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." <u>Horne v. Flores</u>, 557 U.S. 433, 447 (2009) (internal quotation marks omitted).

A judgment can be modified under this portion of Rule 60(b)(5) "only to the extent that it has 'prospective application.'" <u>Twelve John Does v. District of Columbia</u>, 841 F.2d 1133, 1138 (D.C. Cir. 1988). The standard "in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is executory or involves the supervision of changing conduct or conditions." <u>Id.</u> at 1139 (internal quotation marks omitted). The Supreme Court's decision in <u>State of Pennsylvania v. Wheeling & Belmont Bridge Co.</u>, 59 U.S. (18 How.) 421 (1856), provides the definitive example of an executory decree. There, a court order directed that a bridge be either elevated or removed. The Supreme Court held that the part of the decree directing abatement of the construction had prospective application, explaining that, unlike a "judgment rendered in favor of the plaintiff for damages," the decree "is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance." <u>Id.</u> at 431.

Defendants have not cited a single case where a mere remand qualified as an "executory" order under this framework.[2] FWS could have further considered the permits before June 4, 2012, thus satisfying the order. Hence, the remand order, though as yet unexecuted, is not necessarily tied to the future. It is akin to a yet-to-be-satisfied damages award. <u>See also</u> 11 Charles Alan Wright et al., <u>Federal Practice and Procedure: Civil</u> § 2863 (2012) (unlike a "judgment that has prospective effect," "judgments that offer a present remedy for a past wrong do not fall within the rule" (footnotes omitted)). As the D.C. Circuit has explained:

---

[2] Indeed, defendants offer no response at all to plaintiffs' lengthy argument that the April 5, 2012, Order has no prospective application.

> Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect; even a money judgment has continuing consequences, most obviously until it is satisfied, and thereafter as well inasmuch as everyone is constrained by his or her net worth. That a court's action has continuing consequences, however, does not necessarily mean that it has "prospective application" for the purposes of Rule 60(b)(5).

Twelve John Does, 841 F.2d at 1138. The remand here—which directs a single act to be completed without any sort of court supervision—has reverberations into the future only in this very limited sense. Accordingly, Rule 60(b)(5) offers defendants no avenue for relief. This result is unsurprising: as other courts have recognized, relief under Rule 60(b)(5) "has been granted almost exclusively in cases dealing with injunctions and consent decrees." Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 131 F.3d 625, 631 (7th Cir. 1997) (applying Twelve John Does standard).

Moreover, even if the judgment here had prospective application, defendants have not established that retaining the remand "is no longer equitable." Fed. R. Civ. P. 60(b)(5). The April 5, 2012, Order simply remanded the case for further consideration. It did not direct FWS to reconsider the permit under a particular ESA provision. And if, upon reconsideration, FWS reverses course on its enhancement finding, plaintiffs will qualify for a permit regardless of whether the wood bison is classified as endangered or threatened. See 50 C.F.R. § 17.32(a)(1) (allowing permits for importation of threatened species upon a finding of "enhancement of propagation or survival"); 50 C.F.R. § 17.22(a)(1) (allowing permits for importation of endangered species upon a finding of "enhancement of propagation or survival").[3] If plaintiffs choose instead to proceed via the CITES exemption route and successfully import their trophies—which defendants indicate plaintiffs can do quickly and easily, and with fewer

---

[3] Applications for a permit based on enhancement of survival or propagation appear to have identical requirements whether the species is endangered or threatened, and indeed require applicants to fill out the same form (which plaintiffs filled out in applying for the permits). Compare 50 C.F.R. § 17.32(a)(1), with 50 C.F.R. § 17.22(a)(1).

potential restrictions—FWS can, as part of its further consideration, dispose of plaintiffs' permit applications as it would any other applications seeking a permit for an act that already occurred. In other words, nothing in the Court's April 5, 2012, Order prevents FWS from treating these permit applications as it would any other pending applications that concern a species that was reclassified during the application's pendency, nor from granting or denying the permit on newly available grounds. Accordingly, the change in circumstances does not render the order's enforcement detrimental to the public interest. See Horne, 557 U.S. at 447.

Defendants alternatively cite Rule 60(b)(6), but that, too, is of little help to them. The Rule "applies only to 'extraordinary' situations, and [the D.C. Circuit] has cautioned that it should be only sparingly used." Twelve John Does, 841 F.2d at 1140 (citation and internal quotation marks omitted). Accordingly, "a more compelling showing of inequity or hardship is necessary to warrant relief under subsection (6) than under subsection (5)." Id. Here, defendants have failed to demonstrate inequity or hardship that satisfies Rule 60(b)(5), let alone Rule 60(b)(6).

Finally, in a footnote, defendants argue that the reclassification "moots the basis for the Court's remand instructions," an outcome that "also warrants vacatur of the remand instructions." Defs.' Mot. at 12 n.8. The Court disagrees. First, it is not at all clear that the basis for the remand instructions has become moot. In a decision this Court held was arbitrary and capricious, the agency found that importation would not enhance the survival or propagation of the wood bison. If, upon further consideration, the agency reverses this finding, plaintiffs will be able to obtain a permit for importing their trophies despite the reclassification. True, threatened species may also be imported via other routes, and defendants represent that a simpler route is available. Nonetheless, FWS's arbitrary and capricious denial improperly forecloses one route

6

that plaintiffs should have available for importation. Accordingly, it appears that the agency's action is continuing to cause plaintiffs' injury and that further consideration of the agency's finding is likely to redress the injury. See Spencer v. Kemna, 523 U.S. 1, 7 (1998) ("[T]hroughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." (internal quotation marks omitted)).

Moreover, even if the change now renders the controversy moot, this would not warrant vacating the remand instruction. At the time judgment was entered, there was a live case or controversy. Accordingly, defendants have not argued, nor could they, that the judgment was void under Rule 60(b)(4). See Fed. R. Civ. P. 60(b)(4) ("the court may relieve a party . . . from a final judgment" if "the judgment is void"). Had subject-matter jurisdiction been lacking at the time judgment was entered, dismissing the case even at this late hour would be appropriate. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (citation omitted)); see also 5B Wright et al. § 1350 ("[a]fter final judgment a lack of subject matter jurisdiction may be interposed as a motion for relief from the judgment under Rule 60(b)(4)"). In this case, however, the judgment was valid when it became final.

Now that the time for appeal has expired, there is no basis to revisit the valid final judgment based on post-judgment events. Doing so would undermine the finality of valid judgments, indefinitely leaving them open to challenge. Indeed, while appellate courts often vacate a district court's judgment when the case becomes moot pending appeal, that is precisely because mootness precludes appellate review. See Arizonans for Official English v. Arizona, 520

U.S. 43, 71 (1997) ("Vacatur clears the path for future relitigation by eliminating a judgment the loser was stopped from opposing on direct review." (internal quotation marks omitted)). In this case, however, defendants' decision to voluntarily dismiss their appeal—and not mootness—precluded appellate review. Accordingly, reopening the validly entered judgment is not warranted.

Subsequent events present no basis for modifying the Court's April 5, 2012, Order. Hence, upon consideration of [49] defendants' motion to partially vacate amended order, the parties' memoranda, and the entire record herein, and for the reasons explained above, it is hereby

**ORDERED** that [49] defendants' motion is **DENIED.**

/s/
_____
JOHN D. BATES
United States District Judge

Dated: January 2, 2013